GEORGE FISH, an Infant, by GEORGE BURNS, His Guardian ad Litem, Appellant, *v.* THE WAVERLY ELECTRIC LIGHT AND POWER COMPANY, Respondent.

1. NEGLIGENCE — LIABILITY OF ELECTRIC LIGHT COMPANY IN PLACING ELECTRIC LAMPS — WHEN QUESTION OF FACT. Where an electric light company, at the request of a tenant, places in his store electric lights, over which, as to the placing, management and ownership, it retains exclusive control and as to which the tenant assumes no responsibility, it is liable for the exercise of reasonable care; and where an unskilled employee attaches a lamp to the ceiling so insecurely that it falls down and injures a clerk employed in the store, proof of these circumstances, in an action brought by him against the company to recover for such injuries, raises a question of fact for the jury, as to whether or not the company had exercised reasonable care.

2. EVIDENCE — ERRONEOUS EXCLUSION OF TESTIMONY TENDING TO SHOW WANT OF REASONABLE CARE. Where, for the purpose of showing the improper performance of the work, an expert witness for plaintiff, who had examined the ceiling of the store, was asked the question, "In attaching hooks to ceilings by screwing them in, where are they usually screwed?" it is reversible error to exclude the answer under an objection which stated no grounds; since the obvious intention of the question was to show that if the work had been properly performed the hooks would have been so placed as to pass through the ceiling board into a joist; and the question was clearly competent.

*Fish* v. *Waverly El. L. & Power Co.*, 108 App. Div. 356, reversed.

(Argued May 31, 1907; decided October 8, 1907.)

APPEAL from a judgment entered November 27, 1905, upon an order of the Appellate Division of the Supreme Court in the third judicial department overruling plaintiff's exceptions, ordered to be heard in the first instance by the Appellate Division, denying a motion for a new trial and directing judgment for defendant on the nonsuit granted by the trial court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*James O. Sebring* and *Charles C. Annabel* for appellant. The defendant is liable to the plaintiff for the injuries sustained by him because of the falling of the ·lamp caused by

1907.]    FISH *v.* WAVERLY E. L. & POWER CO.    **337**

N. Y. Rep.]    Opinion of the Court, per EDWARD T. BARTLETT, J.

the negligence of the defendant in failing to properly and safely attach the same to the ceiling, and in maintaining the same in an unsafe and improper condition. (*Sharp* v. *E. R. R. Co.*, 184 N. Y. 100; *Kuelling* v. *R. L. Mfg. Co.*, 183 N. Y. 78; *Devlin* v. *Smith*, 89 N. Y. 470; *Butler* v. *Townsend*, 126 N. Y. 105; *Davies* v. *P. H. E. Co.*, 65 Hun, 573; *Wittenberg* v. *Friederich*, 8 App. Div. 433; *Gardner* v. *Friederich*, 25 App. Div. 521; 163 N. Y. 568; *Burke* v. *Ireland*, 26 App. Div. 487; *Grifhahn* v. *Kreizer*, 62 App. Div. 413; 171 N. Y. 661; *Duerr* v. *C. G. Co.*, 86 App. Div. 14; *Connors* v. *G. N. El. Co.*, 90 App. Div. 311.) The defendant's negligence was a question of fact for the jury. (*Becker* v. *Koch*, 104 N. Y. 394; *Sharp* v. *E. R. R. Co.*, 184 N. Y. 100; *Wolf* v. *A. T. Society*, 164 N. Y. 30.)

*Frederick E. Hawkes* for respondent. Plaintiff established no negligence on the part of the defendant. (*Lane* v. *Town of Hancock*, 142 N. Y. 510; *Laidlaw* v. *Sage*, 158 N. Y. 73; *Pollock* v. *Pollock*, 71 N. Y. 137; *Jewell* v. *Parr*, 13 C. B. 916; *I. Co.* v. *Munson*, 14 Wall. 442; *Craig* v. *Laflin*, 55 App. Div. 49; *Ruppert* v. *B. H. R. R. Co.*, 154 N. Y. 90; *Reinhardt* v. *South Easton*, 4 Atl. Rep. 532; *Sharp* v. *E. R. R. Co.*, 184 N. Y. 100; *Becker* v. *Koch*, 104 N. Y. 394.) Defendant owed no duty to plaintiff. (*Devlin* v. *Smith*, 89 N. Y. 470; *Mayor, etc.*, v. *Cunliff*, 2 N. Y. 165; *Losee* v. *Clute*, 51 N. Y. 494; *McMullen* v. *E. E. Ill. Co.*, 13 Misc. Rep. 392; *Swan* v. *Jackson*, 55 Hun, 194; *Cross* v. *Koster*, 17 App. Div. 402; *Kuelling* v. *R. L. Mfg. Co.*, 88 App. Div. 309.)

EDWARD T. BARTLETT, J. The plaintiff seeks in this action to recover damages for personal injuries received under a novel state of facts. A nonsuit was granted at the close of plaintiff's case. It appears that a corporation known as the Gaitley Furniture Company, doing business at Waverly, N. Y., employed the plaintiff as a clerk in its store. A main aisle ran from the front to the rear of this store in the center

22

thereof.    There were three large arc electric lamps suspended
over this aisle, one in front of the store, one about the center
and one near the rear, weighing twenty-six pounds each.
The ceiling of the store consisted of narrow, thin boards
nailed to joists.    The joists ran crosswise of the store and
were about three inches thick, eight inches in the perpendicu-
lar and placed sixteen inches apart.    The ceiling boards were
from half an inch to five-eighths of an inch thick.    One wit-
ness testified that the ceiling boards were pine, and another, a
carpenter, said they were whitewood or basswood.    These three
lamps were placed in position by the defendant company in
the latter part of October, 1903 ; they remained its property
and were under its exclusive care and control thereafter.

On the twenty-second day of January, 1904, about three
months after the lamps were put up, the plaintiff was engaged
in sweeping out the store at about eight o'clock in the morn-
ing, when the hook holding the lamp in the rear of the store
pulled out, thus permitting it to suddenly fall.    The lamp in
its descent struck plaintiff upon the head, glancing to the
floor and thence against a sideboard standing near.    The
result was that the plaintiff, who was alone in the store, was
rendered unconscious, and when he revived had no recollec-
tion of the falling of the lamp and the blow upon his head ;
he was lying on the floor, bleeding profusely from a scalp
wound and feeling faint and confused.    It was proved by
several witnesses who afterwards came upon the scene that
there was a dent in the floor and an abrasion on the sideboard
where the lamp struck.    The lamp was suspended about
twelve feet above the floor of the store.

Evidence was given as to the nature of the injuries and
their possible permanent effect, the trial taking place in Sep-
tember, 1904, about eight months after the accident.    It is
unnecessary, however, to comment upon the nature and pos-
sible permanent effect of the injuries, by reason of the fact
that the trial judge and the Appellate Division have deter-
mined that the defendant is not liable as matter of law on
the conceded facts.

The evidence as to the precise relations existing between the furniture company and the defendant electric light company may be summarized as follows : It appears that shortly prior to the placing of these lamps in position the furniture company had rented this store.    The manager of the furniture company testified that in the latter part of October, 1903, the company took possession of the store and that there was no electric lighting apparatus in it other than the wiring and some small incandescent lights left there by the former tenant ; that shortly thereafter he applied to the company who did this wiring in order to have them put in the arc lamps and was informed that he would have to see the defendant electric light company, who had the exclusive right to do the work ; that he called upon the defendant and it undertook to put arc lamps in the store.    It was proved that the furniture company assumed no responsibility whatever for the installation of these lamps or the precise place in which they were to be located.    The general statement was made that the furniture company wished three lamps, one in front of the store, one about the middle and the other at the rear.

There was no written contract between the furniture company and the defendant company, but the oral agreement was in brief that the defendant company were to remain the owners of the arc lamps, were to place them in position and continue in the exclusive management and control of them ; that their representative was to call weekly, keep them in repair, furnish carbons and clean them ; and they were to present to the furniture company monthly bills for the use of the lamps and these services.

The plaintiff in making out his case was compelled to swear one Harry Hewitt, who was in the employ of the defendant company and had been selected by it to place these lamps in position, and who continued in its employ at the time of the trial.    He swore that his business was that of a trimmer of electric lights; that he was in the employ of the defendant company and had been for nearly seven years.    He further testified : "It is not a part of my duties, that of put-

ting up arc lights.    *    *    *    I am not the regular man who puts up arc lamps; that was not part of my business in the store.    I do not claim to be an expert in putting up arc lamps. I am not an expert.    There are a number of men there connected with the company whose business it is to put up the arc lamps."    This witness was then closely questioned as to the extent of his experience and as to how many lamps he had ever put up prior to the ones in question.    He further testified : " I am trying to figure out how many I have.    I will say four.    These have been attached to ceilings.    I had attached four lamps prior to these three to ceilings, and that constituted the whole total amount of my experience of hanging arc lamps to ceilings, except I have helped other men to do it.    Those constitute the whole number I had done myself, had charge of it."    This witness further testified in substance that he proceeded to the store of the furniture company and found some old hooks in the ceiling that were too small, and removed them, selecting hooks he deemed proper for the purpose.    How he proceeded with his work may be best stated in his own language : " I did not have a hammer with me.    I didn't make any test with a hammer upon the ceiling to ascertain where the joists were.    I didn't look across the ceiling to see where the ends of the boards came and where they were nailed.    I certainly knew this ceiling to be nailed to joists, and I made no effort on that occasion to ascertain the location of these joists.    I screwed it right up there regardless of where the joists were located.    I didn't at that time ascertain whether the hooks that I took up were screwed in joists or not."

It further appears that the furniture company did not interfere with the lamps in any way, but that they were under the exclusive care and control of the defendant company.    The lights were turned on and off by a switch operated from the floor.    It also appears that after the accident the lamp that fell was returned to the defendant company.    It was also proved that the hook that pulled out causing the fall of the lamp was not over a foot distant from a joist, and the jury might have found that it was several inches nearer.

1907.]     Fish *v.* Waverly E. L. & Power Co.     341

N. Y. Rep.]     Opinion of the Court, per Edward T. Bartlett, J.

The plaintiff produced a carpenter as a witness who had worked at his trade for some eighteen years. It appeared that he had examined the ceiling of the store, and he was asked this question: "Q. In attaching hooks to ceilings by screwing them in, where are they usually screwed?" This was ruled out under an objection that stated no grounds, and the plaintiff excepted. The obvious intention of this question was to show that if the work had been properly performed the hooks would have been so placed as to pass through the ceiling board into a joist. The question was clearly competent, and it was error to sustain the objection to it.

This is in substance the evidence of the plaintiff. The latter had rested before the witness Hewitt was sworn, and owing to the discussion that followed on the motion for the nonsuit he was allowed to reopen his case and swear Hewitt, who was evidently a hostile witness. At the close of the examination of this witness plaintiff again rested. The defendant's counsel then said: "I renew the motion for a nonsuit on the same grounds stated, and upon the further ground that the evidence now precludes the idea of any negligence in the erection — putting up of this hook." The original motion was as follows: "1. Defendant moves for a nonsuit upon the ground that there is no evidence in this case that would justify a finding of negligence on the part of the defendant; (2) upon the ground that the defendant is not shown to have owed to this boy any duty whatsover; (3) the defendant would not be liable to a third person even if the facts proved did show negligence in regard to this lamp, as there is no privity of contract between a third person and the defendant, and no such relation existed; (4) that under all the evidence in this case the plaintiff would not be entitled to recover, and no evidence has been given establishing the negligence on the part of the defendant alleged in the complaint."

Plaintiff's counsel then made the following motion: "The plaintiff asks to go to the jury upon all the questions of fact involved in this case, upon all the proofs presented. We ask

to go to the jury upon the question as to the negligence of the defendant, also the question as to the injuries of the plaintiff, and also as to the question as to the defendant having the care, supervision and control of the lamp and being responsible for any injuries resulting from the failure to properly care for and look after the same, and upon all the other questions of fact involved in this case." The court denied the motion and the plaintiff duly excepted. Thereupon the court directed an order to be entered that the exceptions taken by the plaintiff be heard in the first instance by the Appellate Division, and that judgment be suspended in the meantime. The plaintiff duly excepted to each and all of the rulings of the court. The Appellate Division, with a divided court (PARKER, P. J., and CHASE, J., dissenting), overruled the exceptions of the plaintiff, denied his motion for a new trial and directed the entry of judgment upon the order of nonsuit dismissing the plaintiff's complaint.

While no case is cited presenting a precisely similar state of facts, it is clear that the liability of the defendant may be sustained upon well-settled principles of law that have been applied to kindred cases. We start out with the uncontroverted fact that these are lamps after being placed in the store of the furniture company remained the absolute property of the defendant and subject to its exclusive care, management and control. Neither the officers of the furniture company, its employees, nor the customers that entered the store interfered in any way with the lamps in question, which were suspended about twelve feet above the floor, and were visited only once a week by the representative of the defendant in the exercise of its care and control. This is not the case of master and servant resting upon contractual relations, but rather on a situation raising the question whether, under the peculiar circumstances here presented, the defendant does not owe the duty of reasonable care to every person lawfully entering the store of the furniture company either as officer, employee or customer.

It must be conceded at the outset that if the lamps had

been placed in position by the defendant, in the exercise of reasonable care, the plaintiff's case must fail. The plaintiff rests, however, on the allegation that the lamps were put up in an improper and insecure manner, notwithstanding the fact that a situation was presented which would have rendered the work absolutely secure if properly performed. It is to be borne in mind that these joists were only sixteen inches apart and ran crosswise of the store; that the lamp fell in about three months after it was placed in position.

In *Griffen* v. *Manice* (166 N. Y. 188) the point was presented as to the liability of the landlord for the injury to a tenant resulting from the fall of an elevator, and one of the questions litigated was the measure of care that the landlord owed to his tenants and the general public properly frequenting the building and using the elevator. It was contended on the one hand that the landlord was required to use the utmost care and diligence and is liable for the slightest neglect against which human prudence and foresight might have guarded, and upon the other that the maintenance and operation of the elevator required the exercise only of reasonable care. This court decided that the landlord could be held only to the exercise of reasonable care. Cullen, J., writing, after citing *Breen* v. *N. Y. C. & H. R. R. R. Co.* (109 N. Y. 297), which held under the peculiar facts presented that the defendant company was liable only to the exercise of reasonable care, said: "I can see no reason why the rule thus declared is not applicable to all cases, or why the probative force of the evidence depends on the relation of the parties. Of course, the relation of the parties may determine the fact to be proved, whether it be the want of highest care or only want of ordinary care, and, doubtless, circumstantial evidence, like direct evidence, may be insufficient as matter of law to establish the want of ordinary care, though sufficient to prove absence of the highest degree of diligence. But the question in every case is the same whether the circumstances surrounding the occurrence are such as to justify the jury in inferring the fact in issue."

It is true in the case at bar that the defendant company does not occupy precisely the same position as the defendant in the case above cited, but by virtue of its contractual relations with the furniture company, and by parity of reasoning, it should be held liable to the exercise of reasonable care in placing its own property in the store of the furniture company, for which it was receiving monthly compensation.   To this extent the defendant company placed itself in the position of tenant in possession of the store as to all persons lawfully entering it.

In *Duhme* v. *Hamburg-American Packet Co.* (184 N. Y. 404) this court held that a steamship company owes no duty to persons upon its pier awaiting the disembarking of passengers from an incoming vessel whether they are there as mere licensees or because of an implied invitation from the company, except to have the pier in a reasonably safe condition for access and to exercise such ordinary care in the process of docking the vessel as to render it reasonably safe for persons to remain upon the pier.   The principle that we are considering is here applied not to a public place, but to the private property of a steamship company.  It lays down that measure of responsibility under which the company rests as to mere licensees or others impliedly invited upon the premises.

In *Grifhahn* v. *Kreizer* (62 App. Div. 413 ; affirmed without opinion, 171 N. Y. 661) it was held that the lessee of a building who sublets the same to various tenants, and furnishes and maintains a freight elevator therein for their common use, owes to an expressman who uses the elevator in the lawful business of one of the sub-lessees the duty of exercising reasonable care to see that the elevator is safe.

In *San Filippo* v. *American Bill Posting Co.* (188 N. Y. 514) this court held that a bill posting company which had the right to maintain a billboard or sign on the roof of a building under a formal lease from the tenant in possession thereof, in which the company agreed to keep the roof where the board was erected in good repair, and to indemnify the tenant in possession of the building from any and all damages and

claims that he might be liable for in consequence of the maintenance of the board, is liable for the personal injuries resulting from the fall or blowing down of the board by reason of the careless or unsafe manner in which it had been erected.

It is not necessary in determining this case to go to the extent of holding that the same principles of law would apply as in the case of an insecure erection by a contractor in the public streets of arc lamps or any other form of construction, by reason of which persons lawfully on the highway suffered injury. Nor are we called upon to hold that the rule of law should apply as in the cases of race tracks, baseball grounds or other places where seats are erected for the entertainment of the public generally. (*Barrett* v. *Lake Ontario Beach Imp. Co.*, 174 N. Y. 310.) It is true that it might be somewhat difficult to distinguish between the cases of private grounds and other places where the public are generally entertained, but it is quite sufficient in this case to rest our decision upon the rule of law that has been applied to private premises. It certainly would be a reproach to the administration of justice, if under the circumstances disclosed by this record, the defendant company rests under no liability.

We have been referred to a large number of cases that are clearly distinguishable from the one at bar. It seems unnecessary to go over them in detail. Among them are *Loop* v. *Litchfield* (42 N. Y. 351); *Devlin* v. *Smith*, (89 N. Y. 470); *Kuelling* v. *Lean Mfg. Co.* (183 N. Y. 78).

The uncontradicted evidence introduced by the plaintiff establishes a clear case for the jury, and the complaint was erroneously dismissed.

The judgment and order appealed from should be reversed and a new trial granted, with costs to abide the event.

Cullen, Ch. J., O'Brien, Haight, Werner and Hiscock, JJ., concur; Chase, J., not sitting.

Judgment and order reversed, etc.