OPINION OF THE COURT
Kaye, J.
On July 13, 1977, a failure of defendant Consolidated Edison’s power system left most of New York City in darkness. *401 In this action for damages allegedly resulting from the power failure, we are asked to determine whether Con Edison owed a duty of care to a tenant who suffered personal injuries in a common area of an apartment building, where his landlord — but not he — had a contractual relationship with the utility. We conclude that in the case of a blackout of a metropolis of several million residents and visitors, each in some manner necessarily affected by a 25-hour power failure, liability for injuries in a building’s common areas should, as a matter of public policy, be limited by the contractual relationship.
This court has twice before confronted legal questions concerning the 1977 blackout (see, Koch v Consolidated Edison Co., 62 NY2d 548, cert denied 105 S Ct 1177; Food Pageant v Consolidated Edison Co., 54 NY2d 167).
Plaintiff, Julius Strauss, then 77 years old, resided in an apartment building in Queens. Con Edison provided electricity to his apartment pursuant to agreement with him, and to the common areas of the building under a separate agreement with his landlord, defendant Belle Realty Company. As water to the apartment was supplied by electric pump, plaintiff had no running water for the duration of the blackout. Consequently, on the second day of the power failure, he set out for the basement to obtain water, but fell on the darkened, defective basement stairs, sustaining injuries. In this action against Belle Realty and Con Edison, plaintiff alleged negligence against the landlord, in failing to maintain the stairs or warn of their dangerous condition, and negligence against the utility in the performance of its duty to provide electricity.
Plaintiff moved for partial summary judgment against Con Edison (1) to estop it from contesting the charge of gross negligence in connection with the blackout, and (2) to establish that Con Edison owed a duty of care to plaintiff. He argued that Con Edison was prohibited from denying it was grossly negligent by virtue of the affirmed jury verdict in Food Pageant v Consolidated Edison Co. (54 NY2d 167, supra), and that it owed plaintiff a duty even though he was “not a customer of Consolidated Edison in a place where the accident occurred.” Con Edison cross-moved for summary judgment dismissing the complaint, maintaining it had no duty to a noncustomer.
The court granted the motion insofar as it sought collateral estoppel regarding gross negligence,[1] and denied Con Edison’s cross motion to dismiss the complaint, finding a question of fact *402 as to whether it owed plaintiff a duty of care. The Appellate Division reversed and dismissed the complaint against Con Edison. Citing Moch Co. v Rensselaer Water Co. (247 NY 160), the plurality concluded that “Con Ed did not owe a duty to plaintiff in any compensable legal sense” (98 AD2d 424, 428). Justice Gibbons dissented, finding extension of the duty tolerable here because “[t]he tenants of the building in question constitute a defined, limited and known group of people” (id., at p 437). On public policy grounds, we now affirm the Appellate Division order dismissing the complaint against Con Edison.
A defendant may be held liable for negligence only when it breaches a duty owed to the plaintiff (Pulka v Edelman, 40 NY2d 781, 782). The essential question here is whether Con Edison owed a duty to plaintiff, whose injuries from a fall on a darkened staircase may have conceivably been foreseeable, but with whom there was no contractual relationship for lighting in the building’s common areas.
Duty in negligence cases is defined neither by foreseeability of injury (Pulka v Edelman, supra, at p 785) nor by privity of contract. As this court has long recognized, an obligation rooted in contract may engender a duty owed to those not in privity, for “[tjhere is nothing anomalous in a rule which imposes upon A, who has contracted with B, a duty to C and D and others according as he knows or does not know that the subject-matter of the contract is intended for their use” (MacPherson v Buick Motor Co., 217 NY 382, 393). In Fish v Waverly Elec. Light & Power Co. (189 NY 336), for example, an electric company which had contracted with the plaintiff’s employer to install ceiling lights had a duty to the plaintiff to exercise reasonable care. And in Glanzer v Shepard (233 NY 236), a public weigher, hired by a seller of beans to certify the weight of a particular shipment, was found liable in negligence to the buyer. (See also, Wroblewski v Otis Elevator Co., 9 AD2d 294, 296; Rosenbaum v Branster Realty Corp., 276 App Div 167).
But while the absence of privity does not foreclose recognition of a duty, it is still the responsibility of courts, in fixing the orbit of duty, “to limit the legal consequences of wrongs to a controllable degree” (Tobin v Grossman, 24 NY2d 609, 619; see also, Howard v Lecher, 42 NY2d 109), and to protect against crushing exposure to liability (see, Pulka v Edelman, 40 NY2d 781, supra; Ultramares Corp. v Touche, 255 NY 170). “In fixing the bounds of that duty, not only logic and science, but policy play an important role” (De Angelis v Lutheran Med. Center, 58 NY2d 1053,1055; see also, Becker v Schwartz, 46 NY2d 401, 408). The *403 courts’ definition of an orbit of duty based on public policy may at times result in the exclusion of some who might otherwise have recovered for losses or injuries if traditional tort principles had been applied.
Considerations of privity are not entirely irrelevant in implementing policy. Indeed, in determining the liability of utilities for consequential damages for failure to provide service — a liability which could obviously be “enormous,” and has been described as “sui generis,” rather than strictly governed by tort or contract law principles {see, Prosser and Keeton, Torts § 92, at 663 [5th ed]) — courts have declined to extend the duty of care to noncustomers. For example, in Moch Co. v Rensselaer Water Co. (247 NY 160, supra), a water works company contracted with the City of Rensselaer to satisfy its water requirements. Plaintiff’s warehouse burned and plaintiff brought an action against the water company in part based on its alleged negligence in failing to supply sufficient water pressure to the city’s hydrants. The court denied recovery, concluding that the proposed enlargement of the zone of duty would unduly extend liability. Similarly, in Beck v FMC Corp. (42 NY2d 1027, affg 53 AD2d 118), an explosion interrupted a utility’s electrical service, which in turn resulted in the loss of a day’s pay for hourly workers at a nearby automobile plant. In an action brought by the workers, the court denied recovery on the basis of controlling the'unwarranted extension of liability (see also, Nicholson v City of New York, 272 App Div 899, affd 297 NY 548; Kraye v Long Is. Light. Co., 42 AD2d 972; Shubitz v Consolidated Edison Co., 59 Misc 2d 732).
Moch involved ordinary negligence, while Con Edison was guilty of gross negligence, but the cases cannot be distinguished on that basis. In reserving the question of what remedy would lie in the case of “reckless and wanton indifference to consequences measured and foreseen” (247 NY, at p 169), the court in Moch contemplated a level of misconduct greater than the gross negligence involved here (cf. Matter of Almgren v Fletcher, 304 NY 547; Weld v Postal Telegraph-Cable Co., 210 NY 59; 1 NY PJI2d 2:10A [1984 Cum Supp]; Prosser and Keeton, Torts § 34, at 208 [5th ed]). The court in Food Pageant, in upholding the jury’s verdict against Con Edison, noted as instances of Con Edison’s misconduct its employee’s failure to follow instructions to reduce voltage by “shedding load” after lightning had hit the electrical system, and its staffing decisions (54 NY2d, at pp 173-174, supra). Though found by the jury to constitute gross negligence, this behavior was not so consciously culpable as to fall *404 into the category of conduct contemplated as “reckless and wanton” by the court in Moch (compare, Hall v Consolidated Edison Co., 104 Misc 2d 565).
In the view of the Appellate Division dissenter, Moch does not control because the injuries here were foreseeable and plaintiff was a member of a specific, limited, circumscribed class with a close relationship with Con Edison. The situation was thought to be akin to White v Guarente (43 NY2d 356), where an accounting firm was retained by a limited partnership to perform an audit and prepare its tax returns. As the court noted there, the parties to the agreement contemplated that individual limited partners would rely on the tax returns and audit; Refusing to dismiss a negligence action brought by a limited partner against the accounting firm, the court said, “the services of the accountant were not extended to a faceless or unresolved class of persons, but rather to a known group possessed of vested rights, marked by a definable limit and made up of certain components” (id., at p 361; see also, Glanzer v Shepard, 233 NY 236, supra; Fish v Waverly Elec. Light & Power Co., 189 NY 336, supra).
Central to these decisions was an ability to extend the defendant’s duty to cover specifically foreseeable parties but at the same time to contain liability to manageable levels. In White, for instance, liability stemmed from a single isolated transaction where the parties to the agreement contemplated the protection of identified individuals. Here, insofar as revealed by the record, the arrangement between Con Edison and Belle Realty was no different from those existing between Con Edison and the millions of other customers it serves. Thus, Con Edison’s duty to provide electricity to Belle Realty should not be treated separately from its broader statutory obligation to furnish power to all other applicants for such service in New York City and Westchester County (Transportation Corporations Law § 12; Public Service Law § 31 [1]). When plaintiff’s relationship with Con Edison is viewed from this perspective, it is no answer to say that a duty is owed because, as a tenant in an apartment building, plaintiff belongs to a narrowly defined class.[2]
*405 Additionally, we deal here with a system-wide power failure occasioned by what has already been determined to be the utility’s gross negligence. If liability could be found here, then in logic and fairness the same result must follow in many similar situations. For example, a tenant’s guests and invitees, as well as persons making deliveries or repairing equipment in the building, are equally persons who must use the common areas, and for whom they are maintained. Customers of a store and occupants of an office building stand in much the same position with respect to Con Edison as tenants of an apartment building. In all cases the numbers are to a certain extent limited and defined, and while identities may change, so do those of apartment dwellers (compare, White v Guarente, 43 NY2d 356, 361, supra [“situation did not involve prospective limited partners, unknown at the time”]). While limiting recovery to customers in this instance can hardly be said to confer immunity from negligence on Con Edison (see, Koch v Consolidated Edison Co., 62 NY2d 548, supra), permitting recovery to those in plaintiff’s circumstances would, in our view, violate the court’s responsibility to define an orbit of duty that places controllable limits on liability.
Finally, we reject the suggestion of the dissent that there should be a fact-finding hearing to establish the alleged catastrophic probabilities flowing from the 1977 blackout and prospective blackouts, before any limitation is placed on Con Edison’s duty to respond to the public for personal injuries (see, Tobin v Grossman, 24 NY2d 609, 620 [Keating, J., dissenting], supra). In exercising the court’s traditional responsibility to fix the scope of duty, for application beyond a single incident, we need not blind ourselves to the obvious impact of a city-wide deprivation of electric power, or to the impossibility of fixing a rational boundary once beyond the contractual relationship, or to the societal consequences of rampant liability.
In sum, Con Edison is not answerable to the tenant of an apartment building injured in a common area as a result of Con Edison’s negligent failure to provide electric service as required by its agreement with the building owner. Accordingly, the order of the Appellate Division should be affirmed, with costs.

. The collateral estoppel question was decided against Con Edison in Koch v Consolidated Edison Co. (62 NY2d 548).

. In deciding that public policy precludes liability to a noncustomer injured in the common areas of an apartment building, we need not decide whether recovery would necessarily also be precluded where a person injured in the home is not the family bill payer but the spouse. In another context, where this court has defined the duty of a public accounting firm for negligent financial statements, we have recognized that the duty runs both to those in contractual privity with the accountant and to those whose bond is so close as to be, in practical effect, indistinguishable from privity, and we have on public policy grounds precluded wider liability to persons damaged by the accoun *405 tant’s negligence. (See, Credit Alliance Corp. v Andersen & Co., 65 NY2d 536 [decided herewith].)